## Reece Button Hole Machine Co. v. Berkowitz et al.

*A. S. Buchman*, for plaintiff.

*Fox, Rothschild, O'Brien & Frankel*, and *J. J. Katz*, for defendants.

LEWIS, J., May 26, 1936.—This is an action to recover unpaid rentals under three lease agreements entered into

between plaintiff and defendants on January 10, January 24, and November 3, 1927. At the time of the execution of the agreements, defendants, Max A. Berkowitz and Isaac L. Newman, were partners, under the name of Lieberman Manufacturing Company, which name was registered under the Fictitious Names Act of June 28, 1917, P. L. 645.

The subject matter of the agreements are three buttonhole machines leased for a term of 17 years, at rentals based upon 1 cent per 1,200 stitches (automatically registered), calling for a rental of $5 per month for the use of each machine, "and upon termination of this lease for whatever cause, he (lessee) will pay in addition to the sum already paid such further sum as will make the total stitch and minimum rental for each machine not less than five hundred dollars."

The agreements provide further, inter alia:

"If the lessee becomes insolvent or bankrupt, or has a receiving order made against him, or makes an assignment for the benefit of his or its creditors, then, and in each such case, any or all leases of or licenses to use machines, then existing between the lessor and the lessee, shall, at the option of the lessor, cease and determine . . . where the lessee shall consist of two or more persons, and such persons signed the lease, either individually, or by a firm signature, such signature or signatures, shall bind them both jointly and severally to the conditions and agreements herein contained. . . ."

The pleadings which were offered in evidence by plaintiff aver that defendants continued to use the three machines continuously until April 4, 1934, at which time, being in arrears for rent at 1015 Filbert Street, Philadelphia, the machines were levied upon and sold at a public sale by a constable pursuant to a landlord's warrant and distress. Thereafter plaintiff repossessed the machines and brought the present action to recover the sum of $389.50, computed and fixed by agreement of counsel, if there is a right to recover at all.

Separate affidavits of defense were filed by each of the defendants. Defendant Berkowitz pleaded that an involuntary petition in bankruptcy was filed against him individually and trading as the Lieberman Manufacturing Company, in the United States court of this district, and that a composition settlement with the creditors, in which plaintiff participated, was effected and confirmed by the said court on February 17, 1932. He contends, therefore, that, because of his discharge in the bankruptcy proceedings, his liability under the contracts terminated, and that if there is any liability at all it is limited to the use and occupation of the machines subsequent to the bankruptcy proceedings.

Newman, the other defendant, pleaded that he withdrew from the partnership on July 1, 1929, the business thereafter having been continued under and operated by Berkowitz in the firm name. He further pleaded that when plaintiff continued to do business with defendant Berkowitz after his discharge in bankruptcy a new relationship was entered into between plaintiff and defendant Berkowitz, which had the effect of terminating his (Newman's) liability under the original lease, and in effect constituted a novation, under which plaintiff looked to defendant Berkowitz alone for payment for the continued use of the machines.

In the bankruptcy schedules plaintiff was listed as an unsecured creditor in the sum of $64.17, apparently the amount which the bankrupt computed to be due for the use of the machines up to the time of the bankruptcy. Although plaintiff participated in the 20 percent composition settlement, it is obvious that it did not exercise its option to "cease and determine" the contracts. Such being the case, we are unable to agree with defendant's contention that the discharge in bankruptcy terminated their liability under the original contracts, or that the use of the machines by Berkowitz subsequent to the time of the discharge constituted a novation.

The claim of plaintiff was problematical at the time of the bankruptcy and was contingent on the extent to which the machines would be used during the term of the leases. The question which presents itself at this point is how far contingent claims are allowable or provable in bankruptcy proceedings. A very well-considered case upon the subject is Manhattan Properties, Inc., v. Irving Trust Co., 291 U. S. 320, 338. In that case the question was "whether a landlord may prove in bankruptcy for loss of rents payable in the future, where the claim is founded upon the bankrupt's covenant to pay rent, and, in the alternative, upon his breach of a covenant that in event of bankruptcy, the landlord may reënter, and if he does, the tenant will indemnify him against loss of rents for the remainder of the term." Mr. Justice Roberts, speaking for the court, held that the effect of the indemnity covenants was to put the leases in question outside the scope of provable claims:

"Obviously this contract of indemnity is not breached by bankruptcy, and cannot be breached until the duty of indemnifying the landlord arises. That obligation cannot be complete until the expiration of the original term. There can be no debt provable in bankruptcy arising out of a contract which becomes effective only at the claimant's option and after the inception of the proceedings, the fulfillment of which is contingent on what may happen from month to month or up to the end of the original term. . . . Such a covenant is not, as petitioners contend, the equivalent of an agreement that bankruptcy shall be a breach of the lease and the consequent damages to the lessor be measured by the difference between the present value of the remainder of the term and the total rent to fall due in the future."

In our case the lessor had the right to terminate the contracts, but neither the bankrupt Berkowitz, nor defendant Newman, had any such option. Plaintiff chose not to exercise its option and for that reason the agreements were still operative, notwithstanding the bank-

ruptcies. While it is true that the leases provided for a $500 minimum rental, this was contingent on the extent the machines were to be used. The claim could not be determined at the time of the bankruptcy, and, therefore, could not become the basis of a proof of debt against the estate. Defendant Berkowitz was discharged from all of the provable debts up to the time of the bankruptcy, but the discharge did not terminate his obligations under the terms and conditions of the leases. If this is true in the case of the bankrupt, it applies with greater force to the suit presented against defendant Newman.

When Newman withdrew from the partnership he could not absolve himself from personal liability on these leases, which were existing obligations. Moreover, his liability under the contracts was in no way affected by the continuing partner's discharge in bankruptcy: Kimmel et al. v. State ex rel., 46 Am. Bankr. Rep. 613. Unless plaintiff had expressly released Newman, or exercised its option to determine the leases at the time of the bankruptcy, or revested itself of the machines (none of which contingencies occurred in this case), he cannot escape liability.

This matter was tried before Judge Glass, who entered a finding for plaintiff in the sum of $181.95, without writing an opinion giving his reasons for that finding. A new trial was granted by Judges Crane and Rosen, and the matter heard by us again without a jury. It is because our conclusion is different from that at which Judge Glass arrived that we felt impelled to state our reasons thus at length.

A careful consideration of the testimony has satisfied the trial judge that plaintiff should prevail, and accordingly a finding will be entered against defendants in the sum of $389.50.